UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JERMAINE D. HUNTER,

            Plaintiff,                Case No. 2:23-cv-141

v.                                       Honorable Maarten Vermaat

UNKNOWN ORSBORNE et al.,

            Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants O'Brien and Teeple. The Court will also dismiss, for failure to state a claim, Plaintiff's substantive due process claims, and his Eighth Amendment claim against Defendant Gustafson. Plaintiff's First Amendment retaliation claims against Defendants Orsborne, Gustafson, and Neumann, as well as his Eighth Amendment claim against Defendant Orsborne, will remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Corrections Officers Unknown Orsborne, Unknown Neumann, and Unknown Teeple, Grievance Coordinator Unknown Gustafson, and Hearings Officer Unknown O'Brien in their individual capacities.

Plaintiff alleges that on April 20, 2020, Defendant Orsborne ordered Plaintiff, who is black, to the officer's desk and falsely accused him of forcing a white prisoner to seek protective custody. Plaintiff was offended and called Defendant Orsborne a liar. Defendant Orsborne told Plaintiff that she and other officers were going to destroy his personal property, which Plaintiff alleges is an intimidation tactic commonly used at KCF to punish prisoners for filing grievances. (Compl., ECF No. 1, PageID.6–7.)

Plaintiff told Defendant Orsborne that he was filing a grievance and having his family call the prison. Defendant Orsborne then called Plaintiff a snitch in front of several other prisoners, thereby endangering Plaintiff's life. Defendant Orsborne told Plaintiff that she was going to have another KCF officer set him up because "they do what I say," and that she would have him moved to another housing unit. (*Id.*, PageID.7.) Plaintiff tried to reason with Defendant Orsborne, but she started yelling that he was a snitch in front of all the prisoners on base, as well as more prisoners who came to see what was going on. (*Id.*) Plaintiff requested a step I grievance form from Warden Brown (not a Defendant) and Defendant Gustafson. (*Id.*)

Throughout the day Plaintiff was confronted by other prisoners and threatened with violence due to the rumors that he was a snitch spread by Defendant Orsborne. Two of the incidents

4

led to bloody fist fights. As a result, Plaintiff was extremely fearful and obtained a knife and stayed awake until 4:00 a.m. (*Id.*)

At approximately 7:05 a.m., after Plaintiff had finally fallen asleep, he was hit on the head four to five times with a hard object. (*Id.*, PageID.8.) Plaintiff jumped up with the knife and saw Defendant Orsborne standing and pointing her taser directly at his forehead. Defendant Orsborne had her finger on the trigger and was calling Plaintiff "snitches, bitches and n***ers," while threatening to shoot him between the eyes. (*Id.* (asterisks added).) Plaintiff threw up his hands and began to cry and beg Defendant Orsborne not to shoot him. Defendant Orsborne then began laughing and walked out of the cube. (*Id.*) On April 21, 2020, Plaintiff requested a step I grievance form. Later that day, Plaintiff filed two grievances on Defendant Orsborne detailing the events of April 20, 2020, and April 21, 2020. (*Id.*)

On April 23, 2020, Plaintiff was laying under his sheets meditating when he heard Defendant Orsborne whisper in his ear, "You'se n***gers gone learn that us yoopers stick together," in Plaintiff's ear. (*Id.*, (asterisks added).) At which time, Plaintiff felt a hard object press up against his temple. Plaintiff did not immediately know what it was and grabbed it, causing Defendant Orsborne's arm to twist and the taser to discharge into the sheets and ricochet off Plaintiff's television, "leaving a permanent mark on the tube." (*Id.*) Defendant Orsborne pulled her arm back, stating that Plaintiff had better never touch her again or she would "kill [his] ass." (*Id.*) Defendant Orsborne then threw the two grievances that Plaintiff had filed on his lap and walked away, despite the fact that Plaintiff had already approved the postage for them to be mailed on April 21, 2020. (*Id.* at PageID.8–9.)

About ten minutes later, Defendant Orsborne called Plaintiff out to pick up legal copies, and Defendant Gustafson gave him a copy of the April 20, 2020, grievance request with a yellow

5

sticker on it, stating "stick to the facts" and stating that it could still be rejected. (*Id.*, PageID.9.) Defendant Gustafson also gave Plaintiff the April 21, 2020, grievance request with a yellow sticker on it, falsely implying that it had been filed at the wrong facility. When Plaintiff corrected her, Defendant Gustafson became defensive and stated that she did not believe any of Plaintiff's allegations. (*Id.*) Plaintiff asked Defendant Gustafson to check the unit's cameras and informed her of the second tasing incident. (*Id.*) Defendant Gustafson told Plaintiff that she was not processing his April 21, 2020, grievance and that if he continued to pursue his claims against Defendant Orsborne, she would have him placed in solitary confinement for interfering with administrative rules, as well as have him placed on modified access to the grievance procedure. (*Id.*) Plaintiff subsequently refiled the April 21, 2020, grievance with an addendum detailing the April 23, 2020, incident with Defendants Orsborne. Defendant Gustafson quickly rejected this submission as vague. (*Id.*, PageID.9–10.)

Plaintiff refiled all of his grievances against Defendant Orsborne, plus a grievance against Defendant Gustafson, via institutional mail. On May 18, 2020, Defendant Neumann confronted Plaintiff and told him that he needed to learn that they ran the facility, not Lansing. Defendant Neumann gave Plaintiff the step I response to his April 20, 2020, grievance against Defendant Orsborne. (*Id.*, PageID.10.) On June 30, 2020, Defendant Neumann gave Plaintiff his step II response for that grievance, stating that grievances did not accomplish anything except to make enemies, because they were all "one big family up here in the U.P." (*Id.*) During the month of June, Defendant Neumann subjected Plaintiff to a series of retaliatory pat down searches and repeatedly made inappropriate remarks about Plaintiff's appearance that, had they been made by Plaintiff, would have resulted in Plaintiff receiving a misconduct. (*Id.*) On June 24, 2020, Defendant Neumann searched Plaintiff's area of control and left it in a complete shamble. (*Id.*)

6

Following Defendant Neumann's search, Plaintiff informed her that if she did that again, he would file a grievance on her. (*Id.*, PageID.11.) Defendant Neumann replied, "Oh really, like you did with Ms. Orsborne, obviously it didn't work with her, so what makes you think its gonna work with me." (*Id.*) On June 28, 2020, Defendant Neumann walked past Plaintiff's cube and stated, "Hunter you're so fucking messy." (*Id.*) Plaintiff had been cooking, but stopped to ask Defendant Neumann about her comment. Defendant Neumann said that she had called Plaintiff messy and he explained he was cooking. Plaintiff then asked Defendant Neumann "[w]hy in the hell is [sic] you always making inappropriate comments to me. You act like you [sic] flawless." (*Id.*) Defendant Neumann responded that she could do what she wanted on her unit. Plaintiff stated he was going to file a grievance, and Defendant Neumann stated that she did not care because it would accomplish nothing. (*Id.*)

About twenty minutes later, Defendant Neumann returned with Defendant Teeple and demanded Plaintiff's ID card. (*Id.*, PageID.11-12.) Defendant Neumann later told Plaintiff that she was going to write him up. Approximately an hour later, Plaintiff was escorted to solitary confinement and informed that Defendant Neumann had written a class I sexual misconduct charge on him, falsely stating that Plaintiff had made the following statement: "Neumann I just want to apologize to you I know you always see me staring at you but you are just so flawless to me." (*Id.*, PageID.12.) Plaintiff claims that Defendant Teeple acted in collusion with Defendant Neumann in order to retaliate against him. (*Id.*)

During the July 9, 2020, misconduct hearing, Plaintiff asked Defendant O'Brien to review video evidence from "2 side hallway and the front base area in E-unit," because it showed that Defendant Neumann had not pushed her panic button or radio for assistance. (*Id.*) Nor did

7

Defendant Neumann request Plaintiff's ID card or write the ticket until after she "colluded" with Defendant Teeple approximately thirty minutes later. (*Id.*)

Plaintiff states that Defendant O'Brien kept cutting him off, shaking her head, and rushing him to finish talking, and then concluded that Plaintiff was not credible because Plaintiff had not filed a grievance on Defendant Neumann for ongoing harassment and retaliation. (*Id.*, PageID.14.) Defendant O'Brien also indicated that Defendant Neumann's statement that Plaintiff was messy was not inappropriate or harassment, or even the basis for a grievance. (*Id.*) Finally, Plaintiff asserts that Defendant O'Brien refused to make any factual findings regarding the video footage, stating that it was not relevant. (*Id.*) Plaintiff was found guilty and was sentenced to thirty days on toplock. (*Id.*)

Plaintiff's request for a rehearing was denied. (*Id.*, PageID.15.) Plaintiff sought mental health services on a few occasions due to emotional distress, mental anguish, sleeplessness, loss of appetite, insecurity, extreme paranoia, and anxiety that he was experiencing, but his requests were denied because of the ongoing COVID-19 outbreak. (*Id.*) Plaintiff states that he continues to be confronted by other inmates because of the rumors that he was a snitch which were started by Defendant Orsborne. (*Id.*)

Plaintiff contends that each of the named Defendants retaliated against him in violation of the First Amendment and violated various rights under state law. Plaintiff also asserts that Defendants Orsborne and Gustafson violated his rights under Eighth Amendment and that Defendants Neumann and Teeple violated his substantive due process rights under the Fourteenth Amendment. Additionally, Plaintiff contends that Defendants violated his rights under state law. Plaintiff seeks damages, as well as declaratory relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

9

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**      **Defendant O'Brien**

Plaintiff states that Defendant O'Brien is a hearing officer employed by the MDOC. Plaintiff asserts that the manner in which Defendant O'Brien conducted his misconduct hearing and the fact that Defendant O'Brien found him guilty without viewing all the evidence violated his constitutional rights. An MDOC hearing officer's duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017); *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivations of civil rights). Therefore, Plaintiff's claims against Defendant O'Brien will be dismissed.[2]

---

[2] Plaintiff's claims against Defendant O'Brien for declaratory relief are also subject to dismissal. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner

10

### B. Substantive Due Process Claims

Plaintiff asserts that Defendants Neumann and Teeple violated his substantive due process rights when they subjected him to a false major misconduct. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)

---

was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Plaintiff is no longer incarcerated at KCF, and as such, his claims for declaratory relief will be dismissed.

11

(holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the First Amendment specifically applies to Plaintiff's claims regarding the retaliatory false major misconduct charge. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claims against Defendants Neumann and Teeple are subject to dismissal.

### C. Retaliation Claim Against Defendant Teeple

Moreover, Plaintiff's retaliation claim against Defendant Teeple is also subject to dismissal. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

12

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff alleges that Defendant Teeple accompanied Defendant Neumann when Neumann asked for Plaintiff's ID card and that Defendant Teeple colluded with Defendant Neumann. However, Plaintiff fails to allege any facts showing that Defendant Teeple was present during the actual incident, had any knowledge that Defendant Neumann was lying about Plaintiff's conduct, or even took any adverse action against Plaintiff. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's retaliation claim against Defendant Teeple is entirely conclusory, it is properly dismissed.

### D. Eighth Amendment Claim Against Defendant Gustafson

Plaintiff fails to allege that Defendant Gustafson engaged in conduct that violated the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine

13

discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In this case, Plaintiff alleges that Defendant Gustafson interfered with his ability to pursue relief through the grievance process and threatened to have Plaintiff placed in solitary confinement for interfering with administrative rules, as well as have him placed on modified access to the grievance procedure if he continued to pursue his claims against Defendant Orsborne. Such claims do not constitute a denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). Because Plaintiff fails to allege facts showing that Defendant Gustafson subjected him to an extreme deprivation, his Eighth Amendment claim against Defendant Gustafson is properly dismissed.

### E. Remaining Federal Claims

The Court notes that Plaintiff has alleged sufficient facts to show that Defendants Orsborne, Gustafson, and Neumann retaliated against him in violation of the First Amendment and that Defendant Orsborne violated his rights under the Eighth Amendment. As noted above, Plaintiff alleges that after he told Defendant Orsborne that he was filing a grievance and having his family call the prison, Defendant Orsborne called Plaintiff a snitch in front of several other prisoners on more than one occasion, placing Plaintiff in danger of being assaulted. Defendant Orsborne subsequently allegedly threatened to shoot Plaintiff with a taser on two separate occasions, while referring to Plaintiff's use of the grievance system.

With regard to Defendant Gustafson, Plaintiff alleges that she interfered with his ability to file grievances and stated that if he continued to pursue his claims against Defendant Orsborne, she would have him placed in solitary confinement for interfering with administrative rules, as well as have him placed on modified access to the grievance procedure. Finally, Plaintiff alleges

14

that Defendant Neumann wrote a false major misconduct ticket on him in retaliation for his use of the grievance system, stating that Plaintiff needed to learn that they ran the facility, not Lansing, and that grievances did not accomplish anything except to make enemies, because they were all one big family in the U.P.

### F. State Law Claims

Plaintiff also claims that Defendants' actions violated state law. (Compl., ECF No. 1, PageID.21–22.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With respect to Defendants O'Brien and Teeple, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. As to Defendants Orsborne, Gustafson, and Neumann, because Plaintiff continues to have a pending federal claim against these Defendants, the Court will exercise supplemental jurisdiction over his state law claim against Orsborne, Gustafson, and Neumann.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants O'Brien and Teeple will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants O'Brien and Teeple will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's substantive due process claims, and his Eighth Amendment claim against Defendant Gustafson. Plaintiff's First Amendment retaliation claims against Defendants Orsborne, Gustafson, and Neumann, as well as his Eighth Amendment claim against Defendant Orsborne, will remain in the case.

An order consistent with this opinion will be entered.

Dated:  October 2, 2023                     /s/ *Maarten Vermaat*
                                            Maarten Vermaat
                                            United States Magistrate Judge